ILLINOIS CENTRAL GULF RAILROAD, Plaintiff-Appellant, v. AMERICAN PRESIDENT LINES, INC., Defendant and Counterplaintiff-Appellant (General Motors Corporation, Defendant and Counterdefendant-Appellee).

First District (2nd Division)   Nos. 86—2964, 86—2999 cons.

Opinion filed September 22, 1987.

Baker & McKenzie, of Chicago (Francis D. Morrissey, J. Kent Mathewson, and Luke L. Dauchot, of counsel), for appellant Illinois Central Gulf Railroad.

Ray, Robinson, Hanninen & Carle, of Chicago (John P. Maniatis and Harold L. Witsaman, of counsel), for appellant American President Lines, Inc.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and William J. Brennan, of counsel), for appellee General Motors Corporation.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

William Kratky filed a claim against the Illinois Central Gulf Railroad Company (hereinafter ICG) for personal injuries he sustained while in the course of his employment. After settling Kratky's claim with him, ICG commenced the instant action against American President Lines (hereinafter APL) for implied indemnity. APL in turn sued General Motors Corporation (hereinafter GM) for implied indemnity, which action the circuit court dismissed in an order made final and appealable, but from which APL took no appeal.

In ICG's second amended complaint, it added GM as a defendant, also predicated on the theory of implied indemnity. APL thereafter filed a cross-claim against GM, this time premised on the theory of express liability. On September 30, 1986, the circuit court dismissed both the ICG and the APL claims filed against GM, holding that ICG had not pleaded a sufficient pretort relationship with GM to state a cause of action for implied indemnity. The court also held that even if APL were found liable it would not be entitled to indemnity from GM. The action by ICG against APL remains pending in the circuit court. Both ICG and APL have appealed the circuit court's order, which contained the requisite Rule 304(a) finding. 87 Ill. 2d R. 304(a).

On or before February 1, 1978, APL furnished GM with a container into which GM loaded certain tractor parts and forwarded it from its Hudson, Ohio, facility to APL's Baltimore, Maryland, container yard. The contract of carriage was represented by an intermodal bill of lading issued by APL, specifying Baltimore, Maryland, as the port of loading; Oakland, California, as the seaport of exit; and Singapore as the port of discharge. The bill also referred to APL as the "ocean carrier," and GM as shipper and consignee of the goods. The first leg of the shipment was undertaken by an inland carrier, Conrail, which issued a waybill that identified APL as the shipper and consignee of the cargo. Conrail transported the container to Harvey, Illinois, where it was transferred to the ICG. Conrail is not a party to any of these actions.

Somewhere en route between Harvey, Illinois, and a side track in Munger, Illinois, 35 miles west of Chicago, the cargo in the sealed container shifted, causing its doors to bulge. This led to Kratky's inspection of the container on February 11, 1978, when the doors burst open, seriously injuring him. Kratky filed a claim against ICG under the Federal Employer's Liability Act (FELA), which was settled for $260,000. This action arises out of ICG's claim that it is entitled to indemnity for its payment to Kratky.

OPINION

The parties agree that because Kratky's injury was sustained prior to March 1, 1978, neither the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) nor the judicial adoption of contribution in Illinois (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849) is applicable. It should also be noted that since this cause comes before us on a judgment which was awarded on the pleadings pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), we must take as true all facts properly pleaded and all reasonable inferences which can be drawn therefrom, and unless it clearly appears that under no set of facts is a claimant entitled to recovery, a dismissal on the pleadings is error. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790; *Triangle Sign Co. v. Weber, Cohn & Riley* (1986), 149 Ill. App. 3d 839, 501 N.E.2d 315.

## I

■ In order to state a cause of action for implied indemnity, ICG "must allege: (1) a pretort relationship between the third-party plaintiff and the third-party defendant; and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant." (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469, 475 N.E.2d 867.) The parties agree that ICG's complaint satisfies the second prong of the *Van Slambrouck* test. Accepting all well-pleaded facts as true, ICG did plead a cause of action according to which GM was more negligent than ICG. GM's active negligence in loading the cargo was qualitatively different from the passive negligence of ICG, and ICG might not have been negligent in any way.

The parties disagree, however, as to whether ICG has satisfied the first prong of the test set forth above. The supreme court in *Van Slambrouck* formulated the first prong of its test based on the rationale of its previous decision in *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790. In *Muhlbauer*, the court held that a store owner could not recover on a theory of implied indemnity from the alleged employer of a clown who, when performing on the sidewalk in front of the store, injured the plaintiff. The *Muhlbauer* court explained that there must be "some relationship upon which a duty to indemnify may be predicated" (39 Ill. 2d 226, 231-32, 234 N.E.2d 790), but did not specify what the indicia of that relationship

might be.

As a result, our courts developed two different interpretations of *Muhlbauer.* (See Bua, *Third Party Practice in Illinois: Express & Implied Indemnity,* 25 De Paul L. Rev. 287, 298-300 (1976); Kissel, *Developments in Third Party Practice—Contribution and Indemnity,* 71 Ill. B.J. 654, 664-65 (1983).) One line of cases, relying on the pre-*Muhlbauer* cases of *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, 201 N.E.2d 322, and *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 229 N.E.2d 769, held that a pretort relationship was unnecessary. (*Ciosek v. Indiana Harbor Belt R.R. Co.* (1979), 75 Ill. App. 3d 410, 394 N.E.2d 590; *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.) In other cases, however, the court held that a party was not entitled to indemnification unless there was a pretort relationship. *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979; *Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 326 N.E.2d 222.

Our supreme court attempted to resolve this dispute in *Van Slambrouck,* in which it declared as follows:

> "Classic pretort relationships which have given rise to a duty to indemnify include: lessor and lessee [citation]; employer and employee [citation]; owner and his lessee [citation]; master and servant [citation]. In *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, and *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, indemnity was permitted even though there was no pretort relationship alleged and/or proved between the third-party plaintiff and the third-party defendant. However, in *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 231-32, this court stated, '[A] third-party complaint must disclose some relationship upon which a duty to indemnify may be predicated.' " (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469, 475 N.E.2d 867.)

Although the *Van Slambrouck* court lists four "classic pretort relationships" (which actually seem to compress into two because of overlapping) as examples of the requirement, we are afforded no other guidance as to what elements constitute such a relationship or as to what the test may be for deciding whether a relationship is sufficient to justify indemnity. Case law subsequent to *Van Slambrouck* also is devoid of any reference to the elements of a pretort relationship, although it does help to illuminate the issue.

In *Friedman, Alschuler & Sincere v. Arlington Structural Steel*

*Co.* (1985), 140 Ill. App. 3d 556, 557, 489 N.E.2d 308, a portion of the roof of a building collapsed as a result of poor workmanship and the use of faulty materials. The owner of the building brought a claim against the architect and the general contractor for the costs of repairing the project, but not against the subcontractors. The claim was compromised and the architect had to pay 25% of the costs. (140 Ill. App. 3d 556, 557, 489 N.E.2d 308.) When the architect sued the subcontractors for implied indemnity, the court held that the architect was not entitled to such indemnification because the parties did not have a sufficient pretort relationship. After enumerating the four classic pretort relationships listed in *Van Slambrouck*, and after noting that the architect (FAS) had no contractual relationship with either subcontractor, the court in *Friedman* concluded with the following: "While not exclusive, the examples indicate that a pretort relationship requires a specified pre-existing legal relationship beyond mere involvement in a common undertaking. Thus, the relationship alleged by FAS is insufficient to support the pretort relationship necessary for implied indemnity." (140 Ill. App. 3d 556, 560, 489 N.E.2d 308.) In the case at bar, the parties obviously had a more substantial relationship than mere involvement in a common undertaking, and for that reason our case can be easily distinguished from *Friedman*.

Besides *Friedman*, the sole post-*Van Slambrouck* case to even come close to discussing what constitutes a sufficient pretort relationship, and then only upon a narrowly *ad hoc* basis, is *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 497 N.E.2d 143, wherein the court held that: "The status of business invitee is not a relationship which gives rise to a legal duty to indemnify such as in relationships involving vicarious liability, *e.g.*, lessor-lessee, employer-employee, owner-lessee and master-servant." (146 Ill. App. 3d 457, 461, 497 N.E.2d 143.) *Lohman*, however, is distinguishable because, as we shall discuss more fully below, of the presence in the instant case of a contractual relationship between the parties.

ICG places heavy reliance on *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, which at first glance appears to be a case that closely tracks the one before this court. In *Lowe*, employees of the N&W sued the company under the FELA for injuries sustained when a chemical leaked from a tank car. In a counterclaim, N&W asked for indemnity from the manufacturer of the cargo and from the manufacturer of a part of the tank car. There the similarity ceases, however; *Lowe* is not on point since the counts on implied indemnity were not before the court, the court

having decided the case solely on a strict liability basis. 124 Ill. App. 3d 80, 96-97, 463 N.E.2d 792; see also *Zajac v. Illinois Heating & Ventilating Co.* (1980), 82 Ill. App. 3d 1148, 403 N.E.2d 674.

After having surveyed the state of the law of indemnity with reference to pretort relationships, we are prepared to inquire into the existence and sufficiency of such a relationship between GM and ICG. ICG contends that this relationship is demonstrated by the intermodal bill of lading, while GM argues that the waybill governs the carriage of the goods and that the intermodal bill of lading does not establish a contractual relationship between ICG and GM.

■■ ICG's position as to its relationship with GM is correct. The principal case ICG cites in its behalf, *Marine Office of America Corp. v. NYK Lines* (N.D. Ill. 1985), 638 F. Supp. 393, is dispositive as to the issue of the effect of the intermodal bill of lading and is not rebutted by GM. Because *Marine Office* discusses the intermodal bill of lading in terms of a through bill of lading, we should first be clear as to what constitutes a "through bill of lading," which has been defined as follows: " 'Regardless of the routing therein, a through bill of lading is one with the final delivery destination of the goods noted thereon, although transportation of the goods may extend over the lines of connecting carriers.' " (*Woodhouse, Drake & Carey, Inc. v. M/V Righteous* (11th Cir. 1983), 710 F.2d 1523, 1526, quoting *Phoenix Insurance Co. v. Monon R.R.* (85th Cir. 1971), 438 F.2d 1403, 1406.) The court in *Marine Office* rejected the defendant railroads' argument that they were not bound by the intermodal bill of lading because they were not parties to the contract, which is the contention of ICG herein. The court lucidly explained the law governing through bills of lading in the following passage:

"A through bill of lading governs the entire transportation of goods and applies to connecting carriers even though they are not parties to the contract. *E.W. Bowman, Inc. v. Norfolk & Western Railway Co.*, 483 F. Supp. 1322 (W.D. Pa. 1980). This is true regardless of whether the connecting carrier issues a new bill of lading, as the new contract is treated as void for lack of consideration. *S. C. Johnson v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258 n. 3 (7th Cir. 1982); see also *Mexican Light Co. v. Texas Mexican Railway Co.*, 331 U.S. 731, 67 S. Ct. 1440, 91 L. Ed. 1779 (1947). Whether a particular contract is indeed a through bill of lading is a question of fact ***." *Marine Office of America Corp. v. NYK Lines* (N.D. Ill. 1985), 638 F. Supp. 393, 398-99.

■■ In the case at bar, the intermodal bill of lading is a through

bill of lading for the reason that it indicates the final destination of the goods: Singapore. As a result, *Marine Office* dictates that ICG and GM are governed by the intermodal bill of lading, with the waybill being solely a receipt which does not impact upon the legal responsibilities of the parties. 638 F. Supp. 393; accord *United States v. Central of Georgia Ry. Co.* (E.D. Tenn. 1976), 411 F. Supp. 1023, 1026.

■ We thus reverse the trial court and remand the cause for trial since ICG has pleaded a sufficient pretort relationship with GM to state a cause of action for implied indemnity. This result is in accord with the purpose of indemnity, which is to shift the responsibility to the truly culpable party who in fact caused the loss. *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612, 422 N.E.2d 979.

## II

■ GM asserts that APL's claim of express indemnity is barred as *res judicata* because of the trial court's earlier dismissal of the implied indemnity claim of APL, from which dismissal APL did not appeal. In support of its argument, GM cites *Neuberg v. Michael Reese Hospital* (1983), 118 Ill. App. 3d 93, 99, 454 N.E.2d 684, and *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 153-54, 421 N.E.2d 278. However, both of these cases hold that the cause of action must be identical in the two claims for *res judicata* to apply, and in both the courts found that such parallelism existed.

APL cites two cases in which the court did not bar an action on *res judicata* grounds because the action differed from the previous one. (*Rotogravure Service, Inc. v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143; *Foreman v. Martin* (1975), 26 Ill. App. 3d 1028, 325 N.E.2d 377.) The case directly on point, however, is *Ahlvers v. Terminal R.R. Association* (1975), 31 Ill. App. 3d 166, 334 N.E.2d 329, which neither party herein mentions in its briefs. In *Ahlvers*, the court held that a party could bring an express indemnity action although its implied indemnity action had previously been dismissed. (31 Ill. App. 3d 166, 170-71, 334 N.E.2d 329.) In light of *Ahlvers*, APL's express indemnity action is not barred by *res judicata* for the reason that implied and express indemnity are two separate actions with different elements; thus, a party might have a viable action for one but not the other.

■ GM also asserts that this court would be permitting APL to indemnify against its own negligence if we allow its express indemnity claim, and that we would be ruling contrary to the principle that a party may not indemnify against its own negligence unless it

does so expressly. (*Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272.) Whether APL would be indemnifying against its own negligence is a question of fact which is not determinable in a section 2—615 proceeding. Chief Justice Schaefer, speaking for the court in *Muhlbauer*, when confronted with the same situation cautioned that "numerous decisions have emphasized the difficulty of determining, as a matter of law at the pleading stage, that 'in no event' would the defendant have an action over against the third-party defendant." (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 231, 234 N.E.2d 790; accord *Gillette v. Todd* (1969), 106 Ill. App. 2d 287, 293, 245 N.E.2d 923.) Accordingly, it cannot be determined with any degree of certainty at this juncture of the case that APL would be recovering upon its express indemnity claim for its own negligence. Indeed, the trier of fact might determine that GM was the only negligent party and that APL had no liability.

The applicable provision of the intermodal bill of lading reads as follows:

> "The shipper of the goods shall also be liable for and shall indemnify the Ocean Carrier in respect of any injury, loss or damage arising from failure of the shipper or his agents to properly pack and secure any goods loaded in containers, vans, pallets or packages."

Therefore, we hold that APL has stated a cause of action in express indemnity against GM. Accordingly, the trial court's order dismissing this cause of action is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.