AMF, INC., Plaintiff-Appellant, v. VICTOR J. ANDREW HIGH SCHOOL *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—510

Opinion filed June 30, 1988.

338

Tressler, Soderstrom, Maloney & Priess, of Chicago (Shaun McParland and Jean Faulhaber, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Michael A. Pollard, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, AMF, Inc., appeals from an order of the circuit court of Cook County dismissing its complaint against defendants, Victor J. Andrew High School and School District 230, for failure to state a cause of action based upon implied indemnity. For the reasons set forth below, we affirm.

On December 29, 1980, Marie Pell, a student at Victor J. Andrew High School and a participant in its gymnastic program, severed her spine after attempting to perform an aerial somersault off a mini-trampoline manufactured by AMF. (The mini-trampoline is a rebound device set on an incline or slant designed to provide a gymnast with greater height in performing somersaults and other gymnastic feats.) Pell subsequently filed an action against Victor J. Andrew High School, School District 230, and AMF based upon theories of negligence and strict liability.

Prior to trial, the high school and school district entered into a $1.6 million settlement with Pell and they were dismissed as parties. At trial, Pell proceeded against AMF on a strict products liability theory and the jury rendered a $5 million verdict against AMF. The trial court then set off the $1.6 million settlement against the $5 million verdict and entered judgment against AMF for $3.4 million. On appeal to this court, we affirmed the trial court, finding, in pertinent part, that "there was sufficient evidence *** from which the jury

could conclude that AMF's warnings were ineffective" "because their location was inconsistent with the equipment's use," that the settlement between Pell and the high school and school district was made in good faith; and that AMF was barred from seeking contribution from the high school and school district in light of their good-faith settlement with Pell and AMF's failure to file a counterclaim for contribution in the original action as required by section 305 of the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1981, ch. 70, par. 305). *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858.

Thereafter, AMF filed an action in the circuit court seeking indemnification from the high school and school district (defendants) for the $3.4 million it paid to Pell as a result of the judgment entered against it in the original action filed by Pell. Defendants filed a motion to dismiss AMF's complaint, which the trial court granted. In addition, at the close of the hearing on defendants' motion to dismiss, the court also denied an oral motion made by AMF for leave to file an amended complaint. This appeal followed.

In arguing that the trial court erred in dismissing its complaint for indemnification for failure to state a cause of action, AMF contends that it sufficiently pleaded facts to support its action based on vicarious liability resulting from a pretort relationship between itself and defendants, *i.e.*, a seller-buyer relationship or a relationship based upon defendants' role as "learned intermediaries." Alternatively, AMF argues that the trial court erred in denying its motion to amend its complaint to plead additional facts to support its vicarious liability theory. Defendants, on the other hand, contend that implied indemnity, based upon *any* theory, has been absolutely abolished by the enactment of the Contribution Act (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*), that no pretort relationship existed between them and AMF, that principles of *res judicata* and collateral estoppel barred AMF's action for indemnification, that AMF should have been required to file its indemnification action in the original action in order to achieve the purposes of the Contribution Act, and that AMF's motion for leave to amend its complaint was properly denied.

■ For purposes of ruling on a motion to dismiss, all well-pleaded facts contained in a complaint must be taken as true and all inferences therefrom must be drawn in favor of the nonmovant. A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings entitling a plaintiff to relief. *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376,

456 N.E.2d 635.

We first observe that indemnification and contribution are distinct causes of action. Whereas contribution involves a sharing of payment of damage awards by those whose combined actions brought about a common injury, indemnity provides for the complete shifting of liability upon a showing of a pretort relationship between the guilty parties and a qualitative distinction between their conduct. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 348-50, 459 N.E.2d 935.) An indemnification claim may be filed in a pending action by third-party complaint *or* as a separate action after the original action is over and a judgment has been entered against a party or the party has settled a claim made against him. *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 953, 463 N.E.2d 913.

In the instant case, the trial court first found that AMF''s complaint failed to state a cause of action because it appeared to be improperly based on a theory of active/passive negligence, as evidenced by AMF''s allegation in paragraph 30 of its complaint that "the injuries sustained by Lauren Marie Pell were proximately caused by the *major fault* of defendants, who had the *primary* responsibility to supervise, instruct and warn *** Pell, and were not due to the *minor fault*, if any, of plaintiff AMF, who provided warnings on its minitramp and disseminated warnings and instructions to the defendants." (Emphasis added.) The court further found that AMF''s indemnification claim based on a theory of vicarious liability arising from a pretort relationship failed to state a cause of action because this theory had not survived after enactment of the Contribution Act.

In *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 27, 495 N.E.2d 496, our supreme court held that in light of the policies underlying the Contribution Act, implied indemnity based on a theory of active/passive negligence "is no longer a viable doctrine for shifting the entire cost of tortious conduct from one tortfeasor to another." We therefore agree with the trial court in the present case that AMF''s complaint failed to state a cause of action to the extent that it was based on a claim of active/passive negligence.

On the other hand, we cannot say with certainty that the trial court's second finding, that implied indemnity based on vicarious liability arising from a pretort relationship did not survive the Contribution Act, was correct. A number of cases in this court addressing this issue are conflicting and our supreme court has not yet decided the issue. For example, in *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 613, 422 N.E.2d 979, this court held that "the contribution act

has not extinguished indemnity" in cases involving some pretort relationship between the parties which give rise to a duty to indemnity, *e.g.*, in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). This court further held in *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97, 463 N.E.2d 792, that implied indemnity was still viable with respect to "upstream" claims in a strict liability action.

Conversely, in *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 774-75, 469 N.E.2d 653, although this court only determined in the majority opinion that the Contribution Act extinguished a cause of action for active/passive indemnity, the authoring justice also wrote a concurring opinion to his majority opinion stating that "with the passage of the Contribution Act, it is reasonable to conclude that the legislature intended that, without qualification, implied indemnity should no longer exist" and there is "no reason to distinguish between vicarious liability, indemnity in tort cases, or cases alleging 'upstream' strict liability." Approximately one year later, the concurring opinion in *Morizzo* was adopted in *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 302, 486 N.E.2d 1379, *aff'd in part and rev'd in part* (1987), 117 Ill. 2d 162, 510 N.E.2d 889[1]; *Heinrich* held that *all* forms of implied indemnity have been abolished. See also *Hanlon v. Airco Industrial Gases* (1986), 148 Ill. App. 3d 1039, 1046, 500 N.E.2d 494; *Thatcher v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 534, 539, 497 N.E.2d 1352; *Frazer v. A. F. Munsterman, Inc.* (1986), 145 Ill. App. 3d 1092, 1095, 496 N.E.2d 309; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 676, 475 N.E.2d 1383.

As stated above, however, although our supreme court has held that implied indemnity based on active/passive negligence is abolished, it has not yet decided, and specifically has so stated, whether other forms of indemnity such as vicarious liability or "upstream" strict liability are still viable theories for shifting the costs of tortious conduct among jointly liable tortfeasors in view of the Contribution Act. *Heinrich v. Peabody International Corp.* (1987), 117 Ill. 2d 162, 167-68, 510 N.E.2d 889; *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 27, 495 N.E.2d 496.

■■ Here, we need not determine whether the trial court's rea-

---

[1]In modifying this court's opinion in *Heinrich*, our supreme court expressly did not address the issue of whether all forms of implied indemnity survived the Contribution Act; it merely decided that the plaintiff's complaint failed to assert a ground for implied indemnity.

soning on this point was correct based on its reliance on *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379, because we agree with its ultimate determination; AMF failed to state a cause of action based on vicarious liability. To succeed on a vicarious liability theory, a plaintiff must plead *both* a pretort relationship and a qualitative distinction between the conduct of the parties. (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 231-32, 234 N.E.2d 790.) In the present case, AMF contends that a pretort relationship existed between it and defendants based on defendants' alleged role as "learned intermediaries" and, alternatively, based on a seller-buyer relationship.

We first observe that the classic pretort relationships which give rise to a duty to indemnify are between lessor and lessee, employer and employee, owner and lessee, and master and servant. (*Van Slambrouck v. Economy Bailer Co.* (1985), 105 Ill. 2d 462, 469-70, 475 N.E.2d 867.) Relying on *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, AMF claims that the manufacturer-lessor relationship there is comparable to a manufacturer/seller-purchaser relationship here. We disagree. The status of a lessor is quite different from that of a purchaser-consumer. The lessor in *Lowe* was held liable as an "upstream" party in a strict liability situation. Clearly defendants' status as purchasers of AMF's product could only, *arguendo*, subject them to "downstream" liability (see *Van Slambrouck v. Economy Bailer Co.* (1985), 105 Ill. 2d 462, 467, 475 N.E.2d 867) based on active/passive negligence, which, as stated above, has not only been abolished but also could not be the basis of indemnity in a strict product liability action (*Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 593, 317 N.E.2d 749). AMF also relies on a dissenting opinion in *Van Slambrouck* in support of this position, but we find its reliance without merit since a dissent to a majority opinion is not the law of the case. See *Moricoli v. P & S Management Co.* (1982), 104 Ill. App. 3d 234, 432 N.E.2d 903.

■ We also reject AMF's characterization of defendants as "learned intermediaries" as a basis for establishing a pretort relationship between itself and defendants. AMF, relying on several cases that impose a duty on physicians to communicate warnings to patients concerning the propensities of drugs they prescribe based on their role as learned intermediaries between a drug manufacturer and a patient, argues that because defendants received warnings of the dangers of the mini-trampoline, they had a duty, as learned intermediaries, to disseminate such warnings to the ultimate user, here the students in the high school's gymnastic program.

The rationale for imposing a duty on physicians to convey warnings to their patients was stated by our supreme court in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 518, 513 N.E.2d 387, quoting *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, 1579-80, as follows:

> " 'Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. \*\*\* The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative.' "

To date, the learned intermediary doctrine has been limited to drug manufacturer-physician relationships. See *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 485 N.E.2d 551; *Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 464 N.E.2d 1105; *Mahr v. G. D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 390 N.E.2d 1214.

Critical to imposing liability on physicians who prescribe drugs is their failure to communicate warnings to their patients which the manufacturer communicated to them. In the present case, however, as determined by the trial court and affirmed by this court in Pell's original action, AMF failed to give adequate warnings to the defendants in the first instance, which is *res judicata* of AMF's contentions here to the contrary, and, therefore, the learned intermediary doctrine is, if for no other reason, inapplicable. Based on this conclusion, we need not address whether there was a qualitative distinction between the conduct of AMF and defendants.

Accordingly, we hold that the trial court properly dismissed AMF's complaint for indemnification and denied it leave to amend, since AMF could not have stated a cause of action based on vicarious liability on any set of facts.

In light of the foregoing, we also find it unnecessary to address any other issues raised by the parties in the instant appeal.

The judgment of the circuit court is therefore affirmed.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.