COMMONWEALTH EDISON COMPANY, Plaintiff-Appellant, v. HOGE-WARREN-ZIMMERMAN COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 88—0157

Opinion filed January 24, 1989.

Bradley B. Falkof, of Griffin & Fadden, Ltd., and Peter C. John, of Phelan, Pope & John, Ltd., both of Chicago, for appellant.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Edward L. Cooper, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This case involves one of the slowly dwindling but still lingering causes of action which arose before the passage of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) and *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.

The plaintiff, Commonwealth Edison Co. (Edison), appeals from an order granting the motion of the defendant, Hoge-Warren-Zimmerman Co. (HWZ), to dismiss the plaintiff's complaint for implied indemnity. HWZ cross-appeals from the trial court's rejection of other arguments advanced by HWZ to support its motion to dismiss. For the sake of clarity and brevity, therefore, we will treat the cross-appeal as an argument that the trial court could have dismissed the first amended complaint on grounds other than the one upon which the court relied, and, as the appellee, the defendant may properly argue those other grounds to support affirmance of the order. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 478 N.E.2d 384.

On December 7, 1973, James McDaniel, an employee of Douglas Hoge, Alfred Warren and Richard Zimmerman, who were partners and owners of property located at 980 Carnegie Street, Rolling Meadows, Illinois, was sitting on an outside wall of an addition to the property and attempted to hand a 20-foot angle iron to a co-worker situated inside the building. McDaniel was electrocuted when the angle iron came into contact with a high power electric line owned by Edison.

The McDaniel estate filed a wrongful death action as well as other statutory claims against Edison, Hoge, Warren and Zimmerman individually and as owners of the property and Carp Construction Company, a contractor. The case went to trial on September 24, 1979. After the estate rested, Edison settled, paying $500,000 in exchange for a covenant not to sue or to continue suit. We have been informed that Hoge, Warren and Zimmerman also settled with the estate, and the case was dismissed with prejudice as to all defendants on October 3, 1979.

On January 3, 1980, Edison filed a three-count complaint against HWZ. Count I was for implied indemnity, count II was for common law contribution and count III for statutory contribution. Counts II and III were dismissed, and their dismissal is not in issue here.

Then began a long series of motions by HWZ which involved four different judges. It first filed a motion to dismiss, claiming that the allegation of active negligence on the part of Edison in the wrongful death complaint precluded indemnification. Judge Paul Elward denied

that motion on September 29, 1980. HWZ then sought a rehearing on its motion, arguing for the first time that the complaint failed to allege a pretort relationship between Edison and HWZ. That motion was denied by Judge Edward Berman on July 3, 1984. HWZ filed a notice of appeal and a petition for leave to appeal. The appellate court dismissed the appeal and denied the petition for leave. HWZ filed a petition for leave to appeal to the Illinois Supreme Court which was denied on April 2, 1985.

HWZ then filed a motion for summary judgment claiming that Edison could not establish a pretort relationship. Judge Thomas Hoffman denied that motion. The defendant then filed another motion to dismiss on March 4, 1986, alleging that Edison's implied indemnity action was insufficient, because it was based upon HWZ' violation of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*), and that Edison did not qualify as a "protected person" under the law. Judge Hoffman also denied that motion. The defendant filed a second motion for summary judgment, again making the Structural Work Act argument. Judge Hoffman denied that motion, as well as HWZ' subsequent motion for rehearing. On October 20, 1987, the case was assigned to Judge Irving R. Norman to be set for trial.

HWZ filed another motion to dismiss before Judge Norman, again based on the argument that Edison failed to plead an adequate pretort relationship. Judge Norman indicated that he would allow the motion to dismiss on that ground but granted Edison leave to file an amended complaint. Edison filed an amended complaint, and HWZ responded by renewing its motion to dismiss. After a number of hearings, Judge Norman eventually granted HWZ' motion to dismiss on the ground that no adequate pretort relationship had been pleaded by Edison. He expressed disagreement with some of the other arguments advanced by HWZ in support of the motion, with the exception of the argument that Edison was guilty of active negligence as a matter of law. It was his belief that the underlying complaint alleged active negligence on the part of Edison. However, he hinged his decision on the holding that an adequate pretort relationship between the parties had not been pleaded.

The procedural history of this case tracks the changes in the law, and the record will reflect the understandable uncertainty those changes engendered in the minds of the trial judges. For example, the first judge who passed on the argument that a pretort relationship had not been pleaded apparently relied on certain appellate court opinions that one seeking implied indemnity need plead *either* a pretort relationship *or* a qualitative difference in the conduct of the par-

ties. (*E.g., Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.) Those cases we now know are contrary to the expression of the supreme court, which has held that both must be established. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.) The second judge did not agree with the first judge but did not think he had the right to change the ruling. The last judge, Judge Norman, heard considerable argument and considered many cases. His remarks reflect a recognition that the requirement that one must plead and prove a pretort relationship has left the trial judges to a case-by-case resolution of the question. Our own reading of the cases leads to the conclusion that the existence of the relationship is a matter of law to be determined by the court.

■ The problem began with *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790, when the supreme court made it clear that "some relationship upon which a duty to indemnify may be predicated" must exist between the party seeking indemnification and the party from whom it is sought. (*Muhlbauer,* 39 Ill. 2d at 231-32.) The argument has been advanced since *Muhlbauer* that the pretort relationship was restricted to lessor and lessee, employer and employee, owner and lessee and master and servant. (See *Central Illinois Savings & Loan Association v. Du Page County Bank* (N.D. Ill. 1985), 622 F. Supp. 1493.) But that argument has been rejected by the supreme court, implicitly at least, in *Van Slambrouck v. Economy Bailer Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867, and by the appellate court in *Friedman, Alschuler & Sincere v. Arlington Structural Steel Co.* (1985), 140 Ill. App. 3d 556, 489 N.E.2d 308, and *Illinois Central Gulf R.R. v. American President Lines, Inc.* (1987), 161 Ill. App. 3d 733, 515 N.E.2d 242.

■ But no case has defined the term "pretort relationship," as this court has previously noted. (*Illinois Central Gulf R.R.,* 161 Ill. App. 3d at 737-39.) Many have held that the required relationship was not established: *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 497 N.E.2d 143 (business invitee); *Friedman, Alschuler & Sincere v. Arlington Structural Steel Co.* (1986), 140 Ill. App. 3d 556, 489 N.E.2d 308 (architect and subcontractor; involvement in a common undertaking was not enough); *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542 (general contractor and its subcontractor); *Devore v. Peoria Industrial Piping Co.* (1985), 135 Ill. App. 3d 966, 482 N.E.2d 653 (employer and employee; even though the relation of employer and employee existed, since the accident occurred after working hours, the required pretort relationship

had not been established); and *Van Slambrouck v. Economy Bailer Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867 (which underscores the problem. Four justices of the supreme court said that the relationship of manufacturer and purchaser was not sufficient; three justices said that it was).

Edison cites one case in support of its position, *Illinois Central Gulf R.R. v. American President Lines, Inc.* (1987), 161 Ill. App. 3d 733, 515 N.E.2d 242. In that case American President Lines (APL) furnished General Motors (GM) with a container into which GM loaded certain tractor parts and forwarded it to APL's container yard in another State. The contract of carriage was represented by an intermodal bill of lading which referred to APL as the "ocean carrier" and GM as shipper and consignee of the goods. The first leg of the shipment was undertaken by an inland carrier, Conrail, which issued a waybill that identified APL as the shipper and consignee of the cargo. Conrail transported the container to Harvey, Illinois, where it was transferred to Illinois Central Gulf Railroad (ICG).

Somewhere in Illinois the cargo in the sealed container shifted, causing its doors to bulge. William Krakey, an employee of ICG, was inspecting the container when the doors burst open, seriously injuring him. He filed a claim against ICG under the Federal Employers Liability Act. ICG filed a third-party action against GM for implied indemnity which was dismissed. The appellate court reversed the dismissal, but it did not pass on whether the bill of lading established the necessary relationship, because GM implicitly conceded that it did. GM's argument, rather, was that the waybill, not the bill of lading, governed the carriage of the goods and that ICG was not a party to the bill of lading.

Our task then is to determine as a matter of law whether Edison's pleading established the required pretort relationship between Edison and HWZ. The relevant allegations of the complaint provide as follows: HWZ leased and controlled the premises and the construction on which the accident occurred; by an oral contract, Edison provided electricity to the premises which was paid for by HWZ; HWZ impliedly agreed not to damage the transmission lines; Edison provided electricity to the premises by use of an easement over the premises controlled by HWZ; Edison, as part of its contract to provide electricity to its customers, entered the premises controlled by HWZ to repair the damaged distribution lines when another person was injured three hours before McDaniel was killed.

There are also allegations that Edison inquired as to the necessity to protect its lines and was advised no further steel would be lifted by

a crane, that it did not inquire further and was not advised by HWZ that additional construction would continue after the repairs had been made. We think these allegations may be matters of defense but are not relevant to the question of whether the necessary pretort relationship existed.

Edison's argument is based on its oral agreement to provide electricity to HWZ, "the joint responsibility of Edison and HWZ to protect [McDaniel] from electric power lines" and the easement Edison had which permitted it to go on the property to service its lines. We agree with Edison that the absence of a written agreement is not fatal to its position; and we agree that the fact that HWZ was a lessee, rather than the owner of the property, has no effect on the relevance of the easement. But we do not agree that Edison has met the requirements of the rule.

■ The test is whether Edison has pleaded a situation "in which a promise to indemnify can be implied from the relationship" between Edison and HWZ. (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 255, 527 N.E.2d 1248.) At the outset we reject Edison's contention that the "joint responsibility of Edison and HWZ to protect [McDaniel] from electric power lines" has any relevance to the issue before us. Therefore, we will consider only its argument that it had an oral contract to provide electricity and an easement over the property.

■ Edison has a monopoly to supply electrical power, and every person seeking such electrical power must contract with Edison. Further, Edison has an easement over all property so serviced by its power. If Edison's argument is correct here, then it would be correct in every similar case. Every owner of property, be it a factory or a home, by accepting the service of electricity from Edison, would be held to have impliedly agreed to indemnify Edison if any third party should be injured by that electrical power. To carry the argument further, the same principle would be extended to those companies, for example, supplying natural gas or cable television service. Those companies have contracts with property owners to supply a commodity or a service; they have easements to come on the property and they have monopolies or exclusive franchises. To hold that every property owner has impliedly agreed to indemnify those providers is, in our judgment, manifestly unacceptable. Judge Norman correctly held that Edison had not pleaded the necessary allegation, and he properly dismissed the complaint.

We now turn to HWZ' argument that Edison's negligence was active as a matter of law. We note that Judge Norman expressed mis-

givings about the complaint because, he said, the McDaniel complaint against Edison consisted of allegations of active negligence. However, as we have stated, he did not dismiss the complaint on that ground. We judge that his conclusion that the McDaniel complaint charged Edison with active negligence was correct, and we further judge that he could have dismissed the complaint on that ground as well.

■ The McDaniel complaint alleged in two counts that Edison had violated the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111⅔, par. 1 *et seq.*), generally, that it had violated general order 160 of the Illinois Commerce Commission and, specifically, that it violated a number of safety rules. In another count, Edison was charged with negligently operating the 12,000-volt power line, with constructing and maintaining its power line in close proximity to the scaffold upon which the decedent was working and with failure to cover the line with protective insulation after learning of the previous injury to another employee. Judging from Edison's brief, it seems to be saying that the allegation of violations of the Public Utilities Act may be active negligence, but the other allegations are not. We hold otherwise. All of the allegations of the complaint against Edison charge active negligence, contrary to Edison's complaint for indemnity, which contends that its negligence was passive.

Edison further argues that there has been no finding against it and, therefore, the complaint should not be dismissed. We recognize that there is authority that a complaint for indemnity should not be dismissed even where the underlying complaint alleges active negligence against the person seeking indemnity. (*E.g., Trzos v. Berman Leasing Co.* (1967), 86 Ill. App. 2d 176, 221 N.E.2d 787.) In *Trzos* the appellate court reasoned that the evidence at trial might show acts of passive negligence and that the injured party could then amend the complaint to conform the pleadings to the proof. (*Trzos,* 86 Ill. App. 2d at 182.) There are other cases, however, which have upheld the dismissal of a complaint for indemnity before trial of the underlying tort complaint. (See *Loehr v. Illinois Bell Telephone Co.* (1974), 21 Ill. App. 3d 555, 316 N.E.2d 251 (and cases cited therein).) On its face, the reasoning of the court in *Trzos* is an appealing argument, but we do not think it is applicable here. First, we are unable to conjure up any set of facts under which Edison could be held liable for any negligence that would not be characterized as active. Nor has Edison suggested any such facts. Moreover, the estate completed its proof and, we infer, did not amend the pleadings. The concern expressed in *Trzos* is not justified here. Second, any seeming unfairness in not permitting Edison the right to contest the allegations of the McDaniel

complaint is offset by the unfairness that would inure to HWZ. Both Edison and HWZ went to trial together, and after the estate of McDaniel rested its case, both Edison and HWZ entered into settlement agreements as a result of which the estate dismissed its complaint with prejudice. At that point, when HWZ entered into the settlement agreement, we may fairly infer, it had no idea that Edison, three months later, would be seeking indemnity from it.

■ We are aware that case law holds that there is no requirement that a party seeking indemnity must file its complaint in the same action as the underlying tort complaint. (*Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 463 N.E.2d 913.) But the same public policy considerations requiring that a complaint for contribution be tried together with the underlying tort claim are present in claims for indemnity. (*Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 446 N.E.2d 1271; *cf. Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40.) To require HWZ to respond to Edison's complaint would also require a rehearing of all the evidence that had previously been heard, for HWZ would have the right to contest the allegations of the estate even against Edison.

Edison maintains that it settled due to uncertainties which arose at trial. But it admits in its brief that those uncertainties were based on "the allegations that Edison *negligently* failed to comply with procedures developed for the purpose of assisting building contractors and construction companies to comply with Illinois Safety and Health Act Rules and OSHA Rules relating to work performed in proximity to electric lines." (Emphasis added.) Those allegations, we repeat, are claims of active negligence.

There is another reason for rejecting Edison's argument that it was entitled to a trial to determine whether or not the allegations of the McDaniel complaint were true. In *Thatcher v. Commonwealth Edison Co.* (1988), 123 Ill. 2d 275, 527 N.E.2d 1261, Edison and Dow Chemical were sued for damages, and Edison filed a third-party action against Dow seeking indemnity and contribution. Edison then settled with the plaintiff in the tort action. Its complaint against Dow for indemnity was dismissed on the ground that the Contribution Act had abolished actions for implied indemnity. The supreme court upheld the dismissal, but not on the ground ascribed by the trial court. Rather, the court pointed out that the allegations against Edison were, in effect, claims of active negligence and that Edison's settlement "must be considered, a holding that it was liable." (*Thatcher,* 123 Ill. 2d at 279.) We judge that *Thatcher* is controlling and that Edison's settlement here must be considered a holding that it was liable.

Edison argues that *Thatcher* is distinguishable because it involved a defective product and that it was decided after the passage of the Contribution Act. We do not believe those are pertinent distinctions. For these reasons, we hold that the complaint would have been properly dismissed on this additional ground.

HWZ has advanced other arguments for the dismissal, including contentions that an order adjudicating a workers' compensation lien constituted collateral estoppel on the question of active negligence, that the Public Utilities Act is penal in nature and that Edison is barred from prosecuting this action because it has a higher duty of care. Judge Norman rejected all of those arguments. In view of our holding, it would serve no purpose to discuss them other than to say that Judge Norman was right.

For these reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

HARTMAN and SCARIANO, JJ., concur.