FRANCES E. KEMNER *et al.*, Plaintiffs-Appellees, v. NORFOLK AND WESTERN RAILWAY CORPORATION, Defendant-Appellant (Monsanto Company, Defendant; G.A.T.X. Corporation, Defendant-Appellee and Separate Appellant; Dresser Industries, Inc., Defendant-Appellee and Separate Appellee; General American Transportation Corporation, Defendant-Appellee; Willamette Western Corporation, Third-Party Defendant).

Fifth District No. 5—88—0010

Opinion filed September 15, 1989.

246

Stephen M. Schoenbeck, of Schoenbeck, Schoenbeck & Luther, of St. Louis, Missouri, for appellant Norfolk and Western Railway Corporation.

Ted L. Perryman and Lisa L. Fadler, both of Roberts, Perryman & Bomkamp, P.C., of St. Louis, Missouri, for appellee Dresser Industries, Inc.

Michael J. Pitzer and T. Michael Ward, both of Brown, James & Rabbitt, P.C., of St. Louis, MIssouri, for appellee General American Transportation Corporation.

Michael J. Pitzer and T. Michael Ward, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for G.A.T.X. Corporation.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

This appeal is from an order dismissing defendant Norfolk and Western Railway Company's (the Railway's) counterclaim for indemnity against codefendants Dresser Industries, Inc. (Dresser), and General American Transportation Corporation (GATX), entered in the circuit court of St. Clair County in December of 1983.

The incident resulting in this appeal occurred on the night of January 10, 1979, in Sturgeon, Missouri. At approximately 11:15 p.m. on that evening, a tank car being transported by the Railway derailed and was punctured as it came down upon its own wheel mechanisms. The tank car contained a liquid chemical manufactured by codefend-

ant Monsanto Company (Monsanto). The liquid chemical, described as 19,000 gallons orthochlorophenol crude, leaked from the tank car, covering the surface, in varying degrees, along 2,700 feet of the Railway's right of way.

Plaintiffs in the underlying suit were residents of Sturgeon, Missouri, who claimed personal injuries resulting from their exposure to the chemicals which leaked from the tank car. Suit was filed against defendants Railway, Dresser, GATX, and Monsanto in the circuit court of St. Clair County. In a consolidated action, plaintiffs alleged that the derailment and consequent spill were caused by a defective yoke, manufactured by Dresser, which was used by GATX in manufacturing the tank car. Railway's liability was alleged to have resulted from Railway's possession and exclusive control of the tank car at the time of its derailment, and from the Railway's violation the Federal Safety Appliance Act (45 U.S.C.A. §§1 through 7 (West Supp. 1989)). Monsanto's liability was based on several alleged negligent acts, including its failure to inspect the car for defects, its failure to remove the spilled chemicals from the area of the derailment, and its failure to warn the residents living near the area of the derailment of the possible danger resulting from exposure to the chemical.

On July 17, 1981, Railway filed its answer to plaintiffs' complaint, and counterclaims against defendants Dresser, GATX, and Monsanto. On February 10, 1983, Railway filed amended counterclaims against the same defendants seeking indemnity and contribution based on strict liability and negligence.

On December 12, 1983, the day on which jury selection was to begin, plaintiffs announced that they had reached a settlement agreement with Dresser in the sum of $2,900,000. The objections of defendants GATX, Railway, and Monsanto notwithstanding, the trial court dismissed the claims for indemnity of these objecting defendants. The trial court found the settlement between plaintiffs and Dresser to have been entered into in good faith and concluded that such good-faith settlement precluded actions of codefendants for contribution, as dictated by section 2(d) of the Illinois Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 302(d)).

The following day, December 13, 1983, plaintiffs informed the trial court that they had entered into a settlement with GATX for $2,100,000. Again, Monsanto and Railway objected to the settlement, and, again, the trial court found that the settlement was in good faith and therefore precluded any claims from a joint tortfeasor seeking contribution. The trial then proceeded against Monsanto and Railway.

So that it might perfect an interlocutory appeal of the trial court's dismissal of its counterclaims against Dresser and GATX, Railway requested that the court declare the orders of dismissal final. Railway's request was honored, the orders dismissing Railway's counterclaims against Dresser and GATX became final, and Railway filed its timely notice of appeal on February 29, 1984.

On May 8, 1984, we entered an order staying the proceedings on this appeal pending the entry of judgment in the trial court. During December of 1984 while the lengthy trial was in process, Railway entered into a settlement with plaintiffs in the amount of $3,800,000. On October 22, 1987, the trial court entered judgment on the jury verdict in favor of the plaintiffs and against the remaining defendant, Monsanto, in the amount of $1 actual damages for each plaintiff, and $16,250,000 in punitive damages. On January 8, 1988, we vacated the order staying appellate proceedings with respect to the instant appeal, among others. In this appeal, we are asked to determine whether the good-faith settlements of defendants GATX and Dresser preclude Railway's action for indemnity against these defendants. Railway seeks indemnity against Dresser and GATX based on two theories: implied indemnity under strict liability, and indemnity based on vicarious liability.

In two cases filed May 20, 1988, the supreme court considered the viability of indemnity actions in light of the Contribution Act. (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 527 N.E.2d 1248; *Thatcher v. Commonwealth Edison Co.* (1988), 123 Ill. 2d 275, 527 N.E.2d 1261.) In *Frazer*, the supreme court ruled that a claim for indemnity could not be maintained where the party seeking indemnity was found negligent in an underlying action based on a defective product. (*Frazer*, 123 Ill. 2d at 261, 527 N.E.2d at 1258.) In *Frazer*, the plaintiff suffered serious injuries when a rental trailer separated from the hitch on the back of a pickup truck and veered into oncoming traffic where it struck plaintiff's automobile. The hitch to which the trailer had been attached was a portable hitch mechanism which was affixed to the rear bumper of the pickup. Plaintiff filed suit sounding in negligence and strict products liability against the operator of the trailer rental agency and the manufacturers of the portable hitch and trailer. The rental agency operator brought a third-party claim against the manufacturers for contribution and implied indemnity. (*Frazer*, 123 Ill. 2d at 252, 527 N.E.2d at 1249-50.) The manufacturers each settled with the plaintiff, and the rental agency operator was found liable for negligence following a jury trial. (*Frazer*, 123 Ill. 2d at 252-54, 527 N.E.2d at 1250-51.) The trial court dismissed the

rental agency operator's third-party action against the manufacturers, finding that an action for indemnity was barred by the Contribution Act. The supreme court affirmed, finding that because the rental agency operator had been found liable for negligence the operator could not seek indemnity. The supreme court stated that its decision should not be taken as meaning that the Contribution Act abolished all actions for implied indemnity.

In *Frazer*, the rental agency operator was found culpable by a jury, but the question of what might constitute "culpability" for the purpose of determining whether a party may validly claim indemnity when no judgment has been entered was not addressed by the *Frazer* court. However, the *Thatcher* case, filed the same day as *Frazer*, sheds some light on the question of what constitutes "culpability" for purposes of determining whether a party's indemnity actions should be considered on the merits. Relying on *Frazer*, the *Thatcher* court held that a defendant who settled with the plaintiff in an underlying action could not maintain a third-party claim based on implied indemnity. *Thatcher*, 123 Ill. 2d 275, 527 N.E.2d 1261.

The plaintiff in *Thatcher* brought an action against defendants Commonwealth Edison Company and Dow Chemical Company to recover for personal injuries sustained at a plant operated by Commonwealth Edison Company while working with a high-pressure water hose designed and manufactured by Dow Chemical Company. (123 Ill. 2d at 276-77, 527 N.E.2d at 1261-62.) Commonwealth Edison Company filed a third-party action against Dow Chemical seeking contribution and indemnity under a strict products liability theory. The trial court dismissed the contribution claim pursuant to section 2(c) of the Contribution Act and dismissed the indemnity claim pursuant to the holding of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 1352.

The supreme court on appeal affirmed the trial court's dismissal of the indemnity action, but for reasons other than those relied on by the trial court. Noting that the trial court and appellate court "spoke too broadly" when each declared that implied indemnity had been abolished by the Contribution Act, the supreme court focused on the propriety of Commonwealth Edison's indemnity action, assuming that such an action remained valid in the appropriate case. The supreme court in *Thatcher* considered the indemnity-seeking party's substantial settlement, in the amount of $80,000, an indication of culpability sufficient to preclude the settling party from bringing an indemnity action. *Thatcher*, 123 Ill. 2d at 279, 527 N.E.2d at 1263.

In the case now before us, Railway voices two separate theories

of indemnity in support of its contention that its indemnity action should not have been dismissed by the trial court. First, Railway claims indemnity under the "upstream" strict products liability theory, alleging that those upstream from it (Dresser, by whom the allegedly defective yoke was manufactured, and GATX, by whom the tank car was manufactured incorporating Dresser's yoke) are strictly liable for injuries caused by the derailment and should therefore indemnify Railway from any liability imposed upon them. Second, Railway contends that it is entitled to indemnity based on vicarious liability.

██ We find *Thatcher* and its progeny discussed above controlling of Railway's indemnity action based on strict "upstream" liability. Because Railway paid the plaintiffs $3,800,000 in settlement of their claims, and because plaintiffs' pleadings alleged specific acts of negligence on behalf of Railway, we find that *Thatcher* dictates that an indemnity action based on strict product liability cannot be maintained by such a defendant. Therefore, we must affirm the circuit court's dismissal of Railway's indemnity action based on strict product liability of an upstream codefendant.

 Turning to Railway's second contention, in order to succeed on a vicarious liability theory, Railway must plead both a pretort relationship and a qualitative distinction between its conduct and that of the parties by whom Railway seeks to be indemnified. (*AMF, Inc. v. Victor J. Andrew High School* (1988), 172 Ill. App. 3d 337, 526 N.E.2d 584.) In *AMF*, the court observed that the classic pretort relationships which give rise to a duty to indemnify are between lessor and lessee, employer and employee, and master and servant. (172 Ill. App. 3d at 341, 526 N.E.2d at 587.) In *Commonwealth Edison Co. v. Hoge-Warren-Zimmerman Co.* (1989), 179 Ill. App. 3d 120, 534 N.E.2d 427, the court enunciated a test to be applied in determining whether a pretort relationship sufficient to sustain an indemnity action exists. The test requires that a party seeking indemnity based on vicarious liability plead a situation "in which a promise to indemnify can be implied from the relationship." (*Hoge-Warren-Zimmerman*, 179 Ill. App. 3d at 126, 534 N.E.2d at 531, citing *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 255, 527 N.E.2d 1248.) In considering whether Railway has pleaded a situation in which a promise to indemnify can be implied from the relationship between Railway and either Dresser or GATX, we are unable to find that Railway has satisfied this test. In its amended counterclaim, Railway does not specifically speak of vicarious liability and does not plead a pretort relationship necessary to plead indemnity based on a theory of vicarious liability.

We find nothing in the pleadings describing a relationship from which it may be inferred that either Dresser or GATX promised to indemnify Railway for liability arising in the underlying incident. While it is possible that an upstream manufacturer or distributor might indemnify downstream defendants from liability for damages resulting solely from the strict liability of the upstream defendant, this still would not automatically absolve the downstream defendants from being held liable for damages resulting from their own negligence. In addition to Railway's failure to plead a pretort relationship, neither has Railway pleaded nor argued a qualitative distinction between its conduct and that of the parties by whom Railway seeks to be indemnified, as requires by *AMF*. (*AMF*, 172 Ill. App. 3d 337, 526 N.E.2d 584.) Thus, Railway's counterclaim for indemnity based on vicarious liability was properly dismissed.

Based upon our disposition of the issues raised by Railway, we need not separately address the issues raised by separate appellant GATX.

For the reasons stated, the judgment of the circuit court of St. Clair County dismissing defendant Railway's counterclaim seeking indemnity is hereby affirmed.

Affirmed.

HARRISON and RARICK, JJ., concur.