7 September 1999

NOS. 4-98-0675, 4-98-0717 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CHRISTA FORD, a Minor, by and through    )   Appeal from

her Father and Next Friend, DENNIS FORD, )   Circuit Court of

and DENNIS FORD, Individually,           )   Jersey County

Plaintiffs-Appellants,         )   No. 94L40

v.                             )

JERRY NAIRN, BETTY NAIRN, and JUMPKING,  )  

INC., a Corporation,                     )  

Defendants-Appellees.          )  

------------------------------------------

CHRISTA FORD, a Minor by and Through her )

Father and Next Friend, DENNIS FORD and  )

DENNIS FORD, Individually,               )

Plaintiffs-Appellees,          )

v.                             )

JERRY NAIRN and BETTY NAIRN,             )

Defendants-Appellants,         )

and                            )   Honorable

JUMPKING, INC., a Corporation,           )   Thomas G. Russell,

Defendant.                     )   Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs, Christa Ford, a minor, by and through her fa­ther and next friend, Den­nis Ford, and Dennis Ford, individual­

ly, brought this action to recover money damages for injuries to Christa's knee received while she was jumping on a trampo­line.  They al­lege defendants Jerry and Betty Nairn, the tram­po­line owners, had a duty to keep the trampoline in a reasonably safe condition for use by Christa and others using the trampoline with the consent of the Nairns and to warn them of any hazards reason­

ably expected to exist by using the trampoline.  They also al­lege both neg­li­gence and prod­ucts lia­bili­ty against de­fen­dant Jumpking, Inc., the trampo­line manu­fac­tur­er, claiming it was Jumpking's duty to warn consumers of any hazards reasonably ex­

pected to exist by the use of the trampoline, including the haz

ard of two or more people simultaneously jumping, called "double jump­ing," and that Jumpking negligently failed to provide ade­

quate warn­ings.  The trial court grant­ed sum­mary judg­ment for 

each de­fen­dant.  Plain­tiffs appeal from both orders of summary judg­ment, docketed No. 4-98-0675.  The Nairns also appeal, seek

ing dismissal of Jumpking’s third-party complaint against them, docketed No. 4-98-0717.  We affirm the summary judgment orders in No. 4-98-0675 and dismiss the appeal in No. 4-98-0717 as moot.

The Fords filed their complaint on November 7, 1994.  The parties engaged in discovery and numerous discovery depo­si­

tions were taken.  Jumpking filed a motion for summary judgment with an accompanying memorandum and exhibits on April 17, 1997.  On May 7, Jerry and Betty Nairn also filed a motion for summary judg­ment with an accompanying memorandum and exhibits.  No memorandum or exhibits were filed by the plaintiffs in opposition to either motion for summary judgment.  

On September 3, 1997, the Nairns' motion for summary judgment was argued, and the trial court granted it by docket entry on September 29, finding no genuine issue of material fact.  The trial court entered a clarification and amplification of its decision on November 7, finding the Nairns owed no duty to Christa to warn of dangers inher­ent in the use of a trampoline under the circumstances.  Christa was a teenager, and the dangers of the trampoline were open and obvious.  In addition, the trial court found the Nairns are protected from liability for the use of their personal property located on their land pursuant to the Recreational Use of Land and Water Areas Act (Recreational Use Act) (745 ILCS 65/1 
et
 
seq
. (West 1992)).

Further discovery ensued and Jumpking's motion for summary judgment was finally argued on May 28, 1998.  The trial court issued its order on July 23.  The court found the warnings provided by Jumpking were reasonable under the circumstances, the trampoline had been delivered in a safe condition, and plaintiffs failed to establish a causal link between the alleged inadequate warnings and the injury.  Plaintiffs filed a timely notice of ap­

peal from both summary judgment orders. 

The evidence in this case consists primar­ily of the deposition testimony of the parties.  Christa testi­fied in her deposition that on No­vem­ber 8, 1992, she jumped on a tram­po­line at the home of defen­dants, Jerry and Betty Nairn.  She was 14 years old at that time.  Christa was spend­ing time with her friend, Angie Gulledge, on the date of the inci­dent.  Angie asked Christa if she wanted to go jump on the tram­poline at the Nairn resi­dence, across the street from where Angie was liv­ing.  Angie and Christa went to the Nairns' home and talked to the youn­gest daugh­ter, Allison, who asked someone else in the home wheth­er the girls could jump on the trampoline and that "someone" said "yes."  When Christa called home to ask her mother if it would be all right to jump on the trampo­line, Angie told her to tell her moth­

er Jerry Nairn was home and he was the person the girls asked for per­mis­sion.   Christa had never been to the Nairn resi­dence be­

fore but she had jumped on trampo­lines previ­ously at least four or five times.  

Christa described the Nairns' trampoline as big and round with pads all the way around.  At first Christa and Angie jumped sepa­rate­ly on the tram­po­line for about 10 min­utes before Christa Nairn and Toni Frank came to use the trampo­line also.  Christa Nairn and Toni began to do stunts on the trampo­line while both were jumping at the same time, and Christa asked if she could join them.  Christa testified two people jumped ­­toward each other on the trampoline and then jumped away.  They sometimes did a flip or "just little things."  They jumped two, three, or four at a time.    

Christa continued to jump for an additional 15 or 20 minutes.  Toni asked Christa if she want­ed to jump high­er and Christa said, "Sure."   Toni indicated they did it "all the time and it's a lot of fun."  Toni jumped to­ward Christa to make her go high­er and was back in the air when Christa felt a pain in her knee as she land­ed on the tram­poline mat.   

Christa stated she hurt her knee when the tram­po­line mat was coming up and she was coming down.  Christa said when she landed "there was no give in the trampoline to stabilize, and it [the knee] just clicked on me and went out, and there was a sharp pain."   

Christa admitted giving a statement prior to her depo­

sition in which she said she "did come down on it wrong."  She also said, "I came down on my foot.  It was like the inside of my foot had made my knee give out on me."  She further indicated in her statement she was "jumping high."  

Christa observed nothing wrong with the trampoline while she was on it.  The pads were in place and it appeared to be in good condition. The only warnings or labels Christa re

called on the tram­po­line were a white tag on the rail and a lit­

tle square tag on the mat.  Christa stat­ed that, in her opinion, instructions and warn­ings nor­mally stand out but she did not see any.  However, she also admitted she could not say whether any other labels were there as she was not looking for in­struc­tions or warnings and simply did not look.  

Jerry Nairn testified he and his wife purchased their trampoline in 1992.  He confirmed he received ­a user's manual provid­ed by the manufacturer, Jumpking, with the trampoline.  He also confirmed re­ceipt of a placard contain­ing trampoline in

structions and warn­ing decals.  Jerry tes­tified he secured the warning plac­ard to the wall of the Nairn home next to the trampo­

line.  He did not at­tach the placard to the trampoline it­self because he could not find any­where to attach it.  Jerry stated he could have at­tached it to the trampo­line with a twisty tie but did not think it would remain there long.  He placed one of the warn­ing de­cals on the plac­ard and the other on a metal por­tion of the tram­po­line where the user climbs on and off.  Jerry also stated  a warning was sewn on the mat itself, although he did not remember what it said.     

Jerry stated he normally could see kids using the tram­

poline from in­side the house and in his garage where he worked.  He has no knowl­edge of the accident in­volving Christa and has no recol­lection of Angie re­questing permission for herself and Christa to use the trampo­line.  Jerry instructed his children that no double jumping was allowed and noted they read the rules ac­com­panying the trampo­line.  

Betty Nairn confirmed receipt of the user's manu­al, the placard, and the decals at the time of the purchase of the trampo­line.  She also stated the placard and decal were posted on the house beside the trampoline.  Betty stated she and Jerry would not permit double jumping.  She stated the warnings indi­

cated dou­ble jumping was dangerous, and her chil­dren were famil

iar with that rule.  Betty stated anoth­er warning was on the mat itself, including the warn­ing against dou­ble jumping.

The user's manual supplied with the trampoline specif­

ically stated no more than one person should be allowed on the trampoline at a time, and the owner has the responsibility to see that all users are adequately informed of all warn­ings and safety instructions.  The manual also stated the tram­po­line is intended to be used by one person--weighing less than 275 lbs.--at a time.  The manual further stated the owner had the respon­sibility to post the safety instructions placard on the trampo­line and to make sure all users were properly informed of the rules along with all warnings and safety instructions.  The manual set forth the rules, which were repeated on the plac­ard.  The placard spe

cifically stated:

"4.  Permit only one performer at a time on the trampoline.  Two (2) or more perform

ers create additional risks of injury due to collisions, being bounced off the trampo

line[,] and unexpected responses by the tram

poline mat."

The warnings supplied by Jumpking complied with the applicable industry safety standard, ASTM Standard F381-84.

The standard of review for the granting of a summary judgment motion is 
de
 
novo
.  
In re Estate of Hoover
, 155 Ill. 2d 402, 411, 615 N.E.2d 736, 740 (1993).  All issues of fact, plead

ings, depositions, and admissions must be construed strictly against the movant and liberally in favor of the party opposing the motion.  
Loyola Academy v. S&S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215 (1992).

The question of whether a duty to warn exists is a question of law (
Martin v. Ortho Pharma­ceutical Corp.
, 169 Ill. 2d 234, 239, 661 N.E.2d 352, 354 (1996)) and no such duty exists where the danger in­volved is apparent or open and obvious.
  
Klen v. Asahi Pool, Inc.
, 268 Ill. App. 3d 1031,
 1035-36, 
643 N.E.2d 1360, 1363-64 (1994); 
Cozzi v. North Palos Elementary School District No. 117
, 232 Ill. App. 3d 379, 382, 597 N.E.2d 683, 685 (1992).  
The duty to warn is deter­mined by an objective analysis and should focus on the awareness of an ordi­nary person, the typical user's percep­tion and knowl­edge.  
Klen
, 268 Ill. App. 3d at 1035, 643 N.E.2d at 1363. 

Plaintiffs contend the issue of whether a trampoline presents an open and obvious risk was decided in the negative by this court in 
Johnson v. Decatur Park District
, 301 Ill. App. 3d 798, 704 N.E.2d 416 (1998).  
Johnson
 dealt with a minitram­poline used during a "power tumbling" routine.  A minitram­poline is "a rebound device set on an incline or slant designed to provide a gymnast with greater height in performing somer­saults and other gymnastic feats."  
AMF, Inc. v. Victor J. Andrew High School
, 172 Ill. App. 3d 337, 338, 526 N.E.2d 584, 585 (1988).   The plain­

tiff was using the minitram­po­line to pro­pel him­self into a front flip.  
John­son
, 301 Ill. App. 3d at 800, 704 N.E.2d at 418.  The defendant park district argued the risk in­volved in the use of the minitrampoline was analogous to the risk of falling from a height and was open and obvious.  
Johnson
, 301 Ill. App. 3d at 805, 704 N.E.2d at 421.  This court found the use of the mini- tram­po­line in­volved 
spe­cial
 risks that could not be com­pared with the risks of fall­ing from a height or recre­ational activi­ties such as div­ing.  The use of the minitrampo­line re­quired a higher skill level than that in­volved in the use of recreational equip­

ment or in diving and, therefore, had great­er risks.  
John­son
, 301 Ill. App. 3d at 806, 704 N.E.2d at 421-22. 

Johnson
 would control if the present case in­volved a minitrampoline.  We find it distinguishable when a round rec­re­

ation­al tram­po­line is involved.  Distinct dif­fer­ences exist be­

tween the two pieces of equipment and their uses.  A minitram­

poline is used to propel a person off the trampoline and into a gym­nas­tics or tum­bling maneuver.  It would normally be used by those engaged in tumbling or gymnastics with a higher skill level than the average recreational jumper.  A round tram­poline, such as the one used by Christa Ford, is intended for recreational use and is used by backyard jumpers, not to propel themselves off of it and into other maneuvers, but for jumping up and down and remaining on it.  The skill level required is not unusually high and the dangers of using it would be more analo­gous to the dan­

gers in­volved in fall­ing from a height.

Our research has revealed a dearth of Illinois cases deal­ing with an as­sess­ment of the open and obvious danger of a recre­ational tram­po­line.  In the one case found,  
Fallon v. Indi­

an Trail School
, 148 Ill. App. 3d 931, 500 N.E.2d 101 (1986), the alle­ga­tion was the tram­po­line was an ab­nor­mal­ly dan­ger­ous in­stru­

mentality.  In 
Fallon
, the court found no Illi­nois case law dis

cussed whether the trampoline was an abnor­mally dangerous instru

mentality or whether its ordi­nary use in jumping on it in a phys

ical education class was an ultrahaz­ardous activi­ty.  
Fallon
, 148 Ill. App. 3d at 934, 500 N.E.2d at 103.  The court went on to find the trampoline itself was not abnormal­ly dangerous nor was its ordinary use ultrahazardous.  
Fallon
, 148 Ill. App. 3d at 934-35, 500 N.E.2d at 103.

While trampoline jumping may not be abnormally danger­

ous or ultrahazardous, it is certainly not risk-free.  The dan­

gers it presents, however, such as falling from a height, falling while at­tempting to land a "trick," or even falling off, are open and obvious to teenagers and adults.  Risks associated with dou­

ble jumping, such as collisions or increased impact from someone else in addition to oneself applying pressure to the tram­po­line mat, are also open and obvious.  The increased impact and the abil­ity to jump even higher is exactly what at­tracts jumpers to en­gage in double jumping and is what attract­ed Christa Ford in this case.

We are not alone in our assessment that the dangers of tram­poline usage are open and obvious.  Several of our sister states have addressed this issue and come to the same conclusion.  
Liccione v. Gearing
, 252 A.D.2d 958, ___, 675 N.Y.S.2d 728, 729 (1998); 
An­der­son v. Weslo, Inc.
, 79 Wash. App. 829, 835, 906 P.2d 336, 339 (1995); 
Barnes v. Fulton
, 213 Ga. App. 806, 807, 446 S.E.2d 213, 214 (1994); 
Burchinal v. Gregory
, 41 Colo. App. 490, 492, 586 P.2d 1012, 1013 (1978).  
Liccione
 also in­volv­ed dou­ble jump­ing, and all plaintiffs in the cited cases were teenagers except the plaintiff in 
Barnes
.  There, the plaintiff was only in fourth grade, but the court found even children of that age were able to appreciate the open and obvious danger of tram­poline usage.

Cases from other jurisdictions failing to grant summa­ry judgment on the issue of open and obvious danger of trampoline usage all included evidence raising an issue of material fact as to whether the specific plaintiff appreciated the open and obvi­

ous dan­ger of trampoline usage.  See 
Liesener v. Weslo, Inc.
, 775 F. Supp. 857 (D. Md. 1991);
 
Bryant v. Adams
 116 N.C. App. 448, 448 S.E.2d 832 (1994); 
Albritton v. Kiddie, Inc.
, 69 Ohio App. 3d 708, 591 N.E.2d 781 (1990).  

As noted, in Illinois the duty to warn is determined by an ob­jec­tive anal­y­sis, which focuses, not on the individual plain­tiff, but on the awareness of an ordinary person using the prod­uct (
Klen
, 268 Ill. App. 3d at 1035, 643 N.E.2d at 1363)--in this case, a reasonable 14 year old.  We find a reason­able 14 year old would appreciate the open and obvious danger of jumping on a trampo­line, and we find no duty to warn on the part of ei

ther the Nairns or Jumpking.

Further, we find the warnings actually issued by Jumpking were adequate.  Evidence of standards promulgated by an indus­try, trade group, or regulatory agency may be relevant in a prod­uct liability action to determine whether a condi­tion is unreasonably dangerous.  
Ruffiner v. Material Service Corp.
, 116 Ill. 2d 53, 58, 506 N.E.2d 581, 584 (1987).  In this case, the evidence showed the applicable industry standard, ASTM Standard F381-84, applied to round trampolines commonly used in backyards and, further, that Jumpking's warnings complied with this stan

dard.

Because we find the dangers of using a trampoline to be open and obvious, thus obviating any duty to warn a teenage user of the trampoline, we make no determination whether the Nairns are protected from liability under the Recreational Use Act.  745 ILCS 65/1 
et
 
seq
. (West 1992).  For similar reasons, we make no determination whether plaintiffs established a causal link be­

tween Christa's injuries and the alleged inadequacy of the warn

ing given because the Nairns had no duty to warn Christa, and the warnings given were ade­quate.  Finally, we need not reach the issue posited in No. 4-98-0717, so we dismiss that appeal as moot.

The orders of summary judg­ment en­tered in favor of de­

fendants, Jerry and Betty Nairn and Jumpking, are affirmed.

No. 4-98-0675, Affirmed.        

No. 4-98-0717, Appeal dismissed.

McCULLOUGH and GARMAN, JJ., concur.