Jennifer McNICHOLS, Plaintiff,

v.

JOHNSON & JOHNSON, Ortho–McNeil Pharmaceutical, Inc., Johnson & Johnson Pharmaceutical Research & Development, LLC f/k/a R.W. Johnson Pharmaceutical Research Institute, and Walgreen Co., d/b/a Walgreens, Defendants.

No. CIV. 06–160–GPM.

United States District Court, S.D. Illinois.

April 19, 2006.

Roger C. Denton, Schlichter, Bogard & Denton, St. Louis, MO, Jerome J. Schlichter, Schlichter, Bogard, Swansea, IL, for Plaintiff.

Richard K. Hunsaker, Robert H. Shultz, Jr., William W. Blair, Heyl, Royster et al., Edwardsville, IL, for Defendants.

### MEMORANDUM AND ORDER

MURPHY, Chief Judge.

This action is before the Court on Plaintiff Jennifer McNichols' Motion to Remand (Doc. 5). For the following reasons, the motion is **GRANTED**.

#### INTRODUCTION

Plaintiff Jennifer McNichols originally filed this action in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, asserting claims based upon strict products liability, negligence, consumer

fraud, common-law fraud, and breach of warranty arising from personal injuries allegedly caused by Ortho Evra, a prescription contraceptive device manufactured by Defendants Johnson & Johnson, Ortho–McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research & Development, LLC (hereinafter, collectively, "the Johnson & Johnson Defendants").[1] McNichols alleges that Ortho Evra, a transdermal contraceptive patch, has a dangerous propensity to cause blood clots in users of the product and that, as a result of using Ortho Evra, she suffered a severe thrombosis and associated complications. The Johnson & Johnson Defendants removed the action to this Court, asserting that Defendant Walgreen Co. ("Walgreens"), which is, like McNichols, a citizen of Illinois, had been fraudulently joined to defeat federal diversity jurisdiction. McNichols has requested remand of the action to Illinois state court for lack of subject matter jurisdiction.

At issue here are Count IV and Count X of McNichols' complaint, which assert, respectively, a claim in strict products liability that Ortho Evra failed to conform to representations about the product made by the Johnson & Johnson Defendants and Walgreens and a claim for breach of warranty against Walgreens based upon McNichols' purchase of Ortho Evra at a Walgreens pharmacy in Glen Carbon, Illinois. The Johnson & Johnson Defendants contend that McNichols has fraudulently joined Walgreens because her claims against Walgreens are barred by the "learned intermediary" doctrine under Illinois law.

1. The record establishes that Johnson & Johnson is a New Jersey citizen and that the sole member of Johnson & Johnson Pharmaceutical Research & Development, LLC, is Ortho–McNeil Pharmaceutical, Inc., a citizen of De-

## DISCUSSION

### A.  Legal Standard

Federal courts are courts of limited jurisdiction, with power to hear a case only if such power is granted by the Constitution and authorized by statute, and the presumption is that a case lies outside of this limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Application of County Collector of County of Winnebago, Ill.,* 96 F.3d 890, 895 (7th Cir.1996). Because a federal court's jurisdiction is limited, it has a "nondelegable duty to police the limits of federal jurisdiction with meticulous care." *Market St. Assocs. Ltd. P'ship v. Frey,* 941 F.2d 588, 590 (7th Cir.1991). *See also* Fed.R.Civ.P. 12(h)(3); *Krueger v. Cartwright,* 996 F.2d 928, 930 (7th Cir.1993). "[P]olicing the border of federal jurisdiction" is both a duty and a constitutional "necessity." *Unified Catholic Schs. of Beaver Dam Educ. Ass'n v. Universal Card Servs. Corp.,* 34 F.Supp.2d 714, 717 n. 2 (E.D.Wis.1999).

Removal based on diversity jurisdiction requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332; *Id.* § 1441. The party seeking removal has the burden of establishing federal jurisdiction. *See Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id.* Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire*

laware and New Jersey. *See* 28 U.S.C. § 1332(c)(1); *Gracedale Sports & Entertainment, Inc. v. Ticket Inlet,* No. 99 C 2781, 1999 WL 691824, at *1 (N.D.Ill. Aug.23, 1999).

& *Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976). In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999). A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993).

■ A defendant seeking removal based on fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility that the plaintiff can establish a cause of action against a diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). *See also Tom's Quality Millwork, Inc. v. Delle Vedove USA, Inc.*, 10 F.Supp.2d 1042, 1044 (E.D.Wis.1998). Moreover, this burden cannot be shifted to the plaintiff by, for example, pointing to formal defects in the plaintiff's submissions to the court. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (a party asserting federal jurisdiction bears the burden of proving that a case is properly in federal court and may not "be relieved of his burden by any formal procedure"); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir.2000) (fraudulent joinder is not established by a plaintiff's failure to plead up to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure); *Waterloo Coal Co. v. Komatsu Mining Sys., Inc.*, No. C2–02–560, 2003 WL 124137, at *4 (S.D.Ohio Jan.9, 2003) (same).

### B. Fraudulent Joinder

### 1. Count IV of the Complaint (Strict Products Liability)

■ As discussed, Count IV of McNichols' complaint asserts a claim in strict products liability against the Johnson & Johnson Defendants and Walgreens. The Johnson & Johnson Defendants argue that this claim is barred by the learned intermediary doctrine, which provides that, where a manufacturer of a prescription drug gives adequate warning to physicians of the drug's known dangerous propensities, the manufacturer and pharmacists dispensing the drug are relieved of a duty to warn the drug's potential users; instead, the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387, 392 (Ill.1987); *Fakhouri v. Taylor*, 248 Ill.App.3d 328, 187 Ill.Dec. 927, 618 N.E.2d 518, 519–20 (Ill.App.Ct.1993); *Leesley v. West*, 165 Ill.App.3d 135, 116 Ill.Dec. 136, 518 N.E.2d 758, 761–62 (Ill.App.Ct.1988); *Eldridge v. Eli Lilly & Co.*, 138 Ill.App.3d 124, 92 Ill.Dec. 740, 485 N.E.2d 551, 552–53 (Ill.App.Ct.1985).

The Court is skeptical about whether the learned intermediary doctrine is a proper basis for a claim of fraudulent joinder, as it implicates issues about foreseeability and causation germane to the liability of both the Johnson & Johnson Defendants and Walgreens. In *Simmons v. Norfolk Southern Railway Co.*, 324 F.Supp.2d 914 (S.D.Ill.2004), the Court explained that a claim of fraudulent joinder that "indicate[s] that the plaintiff's case [is] ill-founded as to all the defendants" is one which "manifestly [goes] to the merits of the action as an entirety, and not to the joinder" and is "not such as to require the state court to surrender its jurisdiction." *Id.* at 917 (quoting *Chesapeake & Ohio*

*Ry. Co. v. Cockrell,* 232 U.S. 146, 153–54, 34 S.Ct. 278, 58 L.Ed. 544 (1914)). The issue of whether the Johnson & Johnson Defendants gave adequate warning to physicians and users of Ortho Evra is at the heart of this case, and the Court questions whether a finding that Walgreens is shielded from liability by the learned intermediary doctrine might have preclusive effects with respect to the Johnson & Johnson Defendants as well. Presumably a determination that Walgreens is immune from liability under the learned intermediary doctrine would be the law of the case as to the Johnson & Johnson Defendants also. *See Moore v. Anderson,* 222 F.3d 280, 284 (7th Cir.2000) ("Under the law of the case doctrine, ... when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."). *See also Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 574 (5th Cir.2004) (explaining that, when a finding of fraudulent joinder will have law-of-the-case effect as to the liability of diverse defendants, the "jurisdictional" issue is in fact a challenge to the merits of a plaintiff's claim for relief that must be resolved in state court).

■ However, assuming for the sake of argument that the Johnson & Johnson Defendants have properly asserted the learned intermediary doctrine as the basis for their claim that Walgreens has been fraudulently joined, the Court finds nevertheless that the applicability of the doctrine presents questions of fact that must be resolved in state court. Under Illinois law, the learned intermediary doctrine is a shield against liability only where the manufacturer of a prescription drug has given adequate warning of known dangerous propensities of the drug to physicians:

> Because the duty to warn is a duty to [a]dequately warn, it is imperative that the communication of the warnings be given in a manner reasonably calculated to reach the medical profession.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> [The warning] must be in such [f]orm that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use (here, the members of the medical profession) .... [T]he [c]ontent of the warning must be of such a nature as to be comprehensible to the average [physician] and to convey a fair indication of the nature and extent of the danger to the mind of the reasonably prudent [physician] .... [T]he question of whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product. Implicit in the duty to warn is the duty to warn with a degree of [i]ntensity that would cause a reasonable [physician] to exercise ... the caution commensurate with the potential danger .... A clear cautionary statement setting forth the exact nature of the dangers involved would be necessary to fully protect the seller.

*Mahr v. G.D. Searle & Co.,* 72 Ill.App.3d 540, 28 Ill.Dec. 624, 390 N.E.2d 1214, 1230 (Ill.App.Ct.1979). *See also* Allan E. Korpela, Annotation, *Failure to Warn as Basis of Liability under Doctrine of Strict Liability in Tort,* 1973 WL 33912, 53 A.L.R.3d 239 (1974) (collecting cases).

Correspondingly, the learned intermediary doctrine is not a bar to liability where a manufacturer never communicated an adequate warning to physicians. In *Hansen v. Baxter Healthcare Corp.,* 198 Ill.2d 420, 261 Ill.Dec. 744, 764 N.E.2d 35 (Ill. 2002), the court explained that "a drug manufacturer that only share[s] information about its product's toxicity with its

own employees breache[s] its duty to warn the medical community because without this information, doctors [cannot] provide appropriate and comprehensive medical advice for their patients. This prevent[s] them from functioning as 'learned intermediaries' to protect their patients' best medical interests." *Id.* at 43. The court said, "Doctors who have not been *sufficiently* warned of the harmful effects of a drug cannot be considered 'learned intermediaries.'" *Id.* (quoting *Proctor v. Davis*, 291 Ill.App.3d 265, 225 Ill.Dec. 126, 682 N.E.2d 1203, 1215 (Ill.App.Ct.1997)) (emphasis in original). *See also AMF, Inc. v. Victor J. Andrew High Sch.,* 172 Ill.App.3d 337, 122 Ill.Dec. 325, 526 N.E.2d 584, 588 (Ill.App. Ct.1988) ("Critical to imposing liability on physicians who prescribe drugs is their failure to communicate warnings to their patients which the manufacturer communicated to them. In the present case, however, ... AMF failed to give adequate warnings to the defendants in the first instance, ... and, therefore, the learned intermediary doctrine is, if for no other reason, inapplicable.").

■ Most importantly, under Illinois law the issue of whether a manufacturer gave adequate warning of the known dangerous propensities of a drug so as to trigger the learned intermediary doctrine is one of fact. In *Hansen* the Supreme Court of Illinois instructed, "the adequacy of warnings is a question of fact, not law, for the jury to determine." 261 Ill.Dec. 744, 764 N.E.2d at 43 (quoting *Proctor,* 225 Ill.Dec. 126, 682 N.E.2d at 1215). *See also Noyola v. Johnson & Johnson,* No. 85 C 2184, 1986 WL 14657, at *2 (N.D.Ill. Dec.16, 1986) ("[U]nder Illinois law, the adequacy of warnings is ordinarily a question of fact which is inappropriate for resolution on a motion for summary judgment."); *Mahr,* 28 Ill.Dec. 624, 390 N.E.2d at 1230 ("[T]he sufficiency of form, content

and intensity [of a manufacturer's warning to physicians] is not resolved by pointing to a single document, but remains a question to be resolved by the trier of fact in the light of all the information provided by the manufacturer and all that was reasonably possible to provide.").

■ In this instance the clear import of the allegations of McNichols' complaint is that the Johnson & Johnson Defendants never gave adequate warning of the known dangerous propensities of Ortho Evra to physicians so as to trigger the application of the learned intermediary doctrine in this case. *See, e.g.,* Compl. ¶ 9 ("The [Johnson & Johnson] Defendants failed to warn consumers and their health care providers that the transdermal birth control patch Ortho Evra is more likely to cause blood clots than oral contraceptives."). In fact, the complaint alleges that the Johnson & Johnson Defendants deliberately misrepresented those propensities to physicians. *See id.* ¶ 54 ("[The Johnson & Johnson] Defendants communicated the purported benefits of Ortho Evra while failing to disclose the serious and dangerous side effects related to the use of Ortho Evra with the intent that ... healthcare providers rely upon the omissions and misrepresentations and .... prescribe Ortho Evra[.]").

In the Court's view, the question of the applicability of the learned intermediary doctrine in this case is one of fact. Therefore, the question must be resolved in favor of McNichols and remand to state court. *See Poulos,* 959 F.2d at 73. *See also Griggs v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir.1999) ("[W]e have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction."); *Darras v. Trans World Airlines, Inc.,* 617 F.Supp. 1068, 1069 (N.D.Ill.1985) (observing that a court

"need not try (or even pretry) [a] case" to resolve allegations of fraudulent joinder).[2]

### 2. Count X of the Complaint (Breach of Warranty)

■ Count X of McNichols' complaint asserts claims for breach of express warranties and the implied warranty of merchantability. *See* 810 ILCS 5/2–313; 810 ILCS 5/2–314. In addition to the reasons the Court already has given for refusing to find fraudulent joinder based on the learned intermediary doctrine in this case, certain other considerations militate against applying the doctrine in the context of a warranty claim.

First, the Court is not aware of any published decision of an Illinois state court that has extended the learned intermediary doctrine beyond the scope of strict products liability and negligence claims to warranty claims. As discussed, in evaluating fraudulent joinder the Court is required to construe issues of state law in the light most favorable to McNichols. *See Poulos*, 959 F.2d at 73. *See also Polson v. Cottrell, Inc.*, No. 04–CV–822–DRH, 2005 WL 1168365, at *1 (S.D.Ill. May 17, 2005) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir.1992)) ("[I]f

'intricate analysis of state law' is needed to dismiss [a] claim, the claim may not be disregarded for purposes of diversity jurisdiction."). *Cf. Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir.1992) ("In evaluating fraudulent joinder claims, we must … resolve all … ambiguities in the controlling state law in favor of the non-removing party.").

Second, the Court's research indicates that even in jurisdictions that have extended the learned intermediary doctrine to warranty claims, claims for breach of express warranty have been excluded from the scope of the doctrine, for reasons the Court finds persuasive in this case. For example, in *Rite Aid Corp. v. Levy–Gray*, 391 Md. 608, 894 A.2d 563 (Md. Mar. 13, 2006), the court held that the learned intermediary doctrine did not insulate a pharmacy from liability for breach of an express warranty made by the pharmacy in a patient package insert:

> [W]e decline to extend the doctrine to those cases in which the pharmacy is disseminating information concerning the properties and efficacy of a prescription drug. To extend the defense to the facts of the instant case to insulate the pharmacy from the consequences of its

---

**2.** The Court notes that Count IV of McNichols' complaint asserts a claim for strict products liability on the alleged grounds that "[t]he Ortho Evra birth control patch supplied by the [Johnson & Johnson] Defendants and Walgreens was defective in that … it did not conform to representations made by all Defendants concerning the safety of the product." Compl. ¶ 29. To the Court's knowledge, strict products liability in Illinois is limited to three kinds of claims: defective design; defective manufacture; and failure to warn. *See, e.g., Miller v. Rinker Boat Co.*, 352 Ill. App.3d 648, 287 Ill.Dec. 416, 815 N.E.2d 1219, 1230 (Ill.App.Ct.2004). It is difficult to determine whether Count IV is in the nature of a failure-to-warn claim; although the preceding count of the complaint asserts an explicit claim for failure to warn, it does so only

against the Johnson & Johnson Defendants, excluding Walgreens. However, in evaluating a claim of fraudulent joinder, the Court must construe all of McNichols' factual allegations in the light most favorable to her. *See Kocot v. Alliance Mach. Co.*, 651 F.Supp. 226, 227 (S.D.Ill.1986). Thus, the Court has assumed for purposes of the instant motion for remand that Count IV asserts a failure-to-warn claim, a reasonable construction of the complaint if the term "representations" for purposes of Count IV is taken to include partial and inadequate warnings and omissions. *See Blue v. Environmental Eng'g, Inc.*, 215 Ill.2d 78, 293 Ill.Dec. 630, 828 N.E.2d 1128, 1140 (Ill.2005). In any event, the precise nature of Count IV does not alter the Court's analysis regarding the learned intermediary defense set out above.

affirmative decision to distribute information and instructions contained that provide direction to the patients in a patient package insert is without legal justification. Therefore, we decline to hold as a matter of law that the "learned intermediary" doctrine precludes a pharmacy from being held liable for breach of express warranty when it provides a package insert that could provide the basis for such a warranty.

*Id.* 894 A.2d at 579. *See also Rosci v. AcroMed, Inc.,* 447 Pa.Super. 403, 669 A.2d 959, 969 (Pa.Super.Ct.1995) (holding that a patient's claim against a manufacturer of bone plates and screws for breach of express warranties was not barred by the learned intermediary doctrine because the basis for the claim "is unrelated to the issue of the warnings given to the prescribing physician and instead is based solely upon the express affirmation of fact made by the manufacturer.").

The Court sees no reason why pharmacists should not be bound by their own voluntary contractual undertakings. More to the point, the Court sees great mischief in allowing contracting parties to make representations, then evade them through invocation of the learned intermediary doctrine, particularly where the representations at issue are likely to affect public health. McNichols has properly asserted a claim for breach of warranty against Walgreens, and, therefore, this case will be remanded to Illinois state court for lack of federal subject matter jurisdiction.[3]

## C. Costs and Expenses under 28 U.S.C. § 1447(c)

McNichols requests an award of costs and expenses pursuant to 28 U.S.C. § 1447, which provides, in pertinent part, "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005), the Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 711. The Court concludes in its discretion that an award pursuant to section 1447(c) is not appropriate in this case.

### CONCLUSION

For the foregoing reasons, Plaintiff Jennifer McNichols' Motion to Remand (Doc. 5) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

---

**3.** Naturally, the scope and enforceability of the warranties at issue is not a matter the Court can resolve in addressing the question of fraudulent joinder. *See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 551 n. 14 (5th Cir.1981) (identifying the issue of "was there a contract?" as one that "relate[s] to matters of substance rather than jurisdiction" and "[is] to be resolved in favor of the plaintiff" in evaluating a claim of fraudulent joinder).